Good morning, Your Honors. If it pleases the Court, my name is Luke Cole, and I represent the Appellant's Here Kivalina Relocation Planning Committee, or KRPC, as well as the individual move-ins Enoch Adams, Jr., Leroy Adams, Andrew Koenig, Jerry Norton, and Joseph Swan. While there were six individuals who initially sought substitution here, I'm sorry to report that David Swan passed away at age 57 on May 5th of this year. Today, I'd like to focus on the merits of the appeal, and then talk about some of the jurisdictional issues that surround this case. And then, if there's time, I'd like to talk about the three outstanding motions. If I don't get to the motions, I'd like to submit those on our briefs. I'd also like to reserve some time for rebuttal. This case concerns the attempts by five residents of the Inupiaq village of Kivalina, Alaska, to stop the pollution of their drinking water by the defendant, Teck Cominco, Alaska. Now, let me ask you this, if I can, and I'm afraid I'm jumping to the jurisdictional stuff. It sounds as though another way of describing the case is that this is an attempt by the Kivalina Relocation Planning Committee to bring a lawsuit with respect to the drinking water. Afterwards, with an attempt to intervene, the individuals seek to do so. That's a separate question as to whether or not they were properly denied the right to intervene, right? I'm not sure I understand where you're under, what you're seeking here. Well, I guess I'd like to answer the first question for me, is whether the Relocation Planning Committee, on its own, without regard to other individual plaintiffs who might seek also to be joining this lawsuit, whether the committee on its own has standing to bring this lawsuit. We think it does, Your Honor, but in an effort... Because? Excuse me. Because? Because its members have individual standing. But what's the purpose of the committee? To study the relocation and take any other necessary actions for the relocation of the community, including securing safe drinking water. Now, this including safe drinking water, did you add that, or is that written into some official document? I'm sure I could point, Your Honor, to many documents where the committee is discussing drinking water. That's one of the separate issues of the relocation. No, I'm thinking about some sort of organic document that sets up the committee or gives the committee the powers and so on. Are you adding to those documents and looking into drinking water? Those do not say specifically drinking water, but drinking water is the central issue in the relocation. Yes, that is. But do they have the capacity to sue and be sued, do they have the authority from their creating body to bring this lawsuit? Because that also determines whether they have the jurisdiction to bring the motions. I think, Your Honor... I think, Your Honor, that any jurisdictional defects here could be easily cured by the court in a couple of ways. One is to grant the appeal as to the Rule 59e motion, which then would allow the individuals to... If they don't have standing to bring the lawsuit, they don't have standing, I don't think, to bring the motion. Now, it makes it nice if we just all erase that, it will all go away, and therefore you get more causes of action that are not barred that are now being subject to the other lawsuit that was brought after with the proper parties in it. So if we just, as Judge Fletcher said, brought up the issue of these jurisdictions, if we just ignore those, we could probably clean up everything, I guess. How do we do that? Well, I think you can do it either under Rule 17 or under Rule 21. The idea under Rule 17a is that if there's an appropriate plaintiff, a case should not be dismissed for want of a plaintiff. Here you have appropriate plaintiffs who've given actual notice, met with Tecumeco in the notice period, and could easily step in in the state of care. Now, is Rule 17 written in terms of if there is an appropriate plaintiff? I thought that was real party and interest. Well, it says if there is an appropriate plaintiff who is a real party and interest... Yeah, I'm afraid I need that part, too. Well, certainly the individuals are real parties and interest here, and there's no dispute here. Tecumeco has said in his briefs below that the individuals, as individuals, are the real parties and interest here. That's not a dispute. But another way you can get to cure this jurisdictional defect, Your Honor, is the same way that you did in the California Credit Union League case, where after a case had been going for a while, the court said, we need to fix a jurisdictional problem. Under Rule 21, we will join the necessary party. I never had any proceedings here or discovery or anything. It was a different case. In that case or in this case? In this case. This case has barely started. In this case, we had extensive discovery, and in fact, the discovery cutoff had closed by the time the case was dismissed. Help me understand the relationship between this suit and the other suit that has been in the name of the individual plaintiffs. That suit alleges 2,200 violations of Tecumeco's Clean Water Act. It's brought by the five individuals who seek to substitute in here. And help me understand why, given the existence of that suit, you want this one. What's not available in that suit that might be available in this suit? Because of the statute of limitations, the five-year statute of limitations, all of the violations are lost to the plaintiffs. And because of the Gwaltney issues, there were violations at the port site of the chlorine standard that were ongoing in September 2002, when the first suit was filed, that were not ongoing in March 2004, when the second suit was filed. And that's about 540 violations. So you're talking about a universe of violations of roughly 675 violations that are lost to the plaintiffs. And what are you seeking as a consequence of those violations that are present for purposes of the statute of limitations here, but would be lost in the other suit? What's at stake if you get that? Penalties. And how much are those penalties? At the statutory maximum of $27,500 per violation, it's something north of $18.5 million. And how many violations do you allege in the suit that's ongoing for which we don't have this problem? 2,200, Your Honor. And how much money do you get assuming your ship comes in and you get your full amount? The statutory maximum is something close to $60 million. Are you also asking for equitable injunctive relief? Absolutely. In the new suit, we're asking for injunctive relief. And one of the things that would be lost here is that we couldn't ask for injunctive relief as to the chlorine violations, which were ongoing for a period of five years before the first suit was filed and then were stopped, but may start up again in the future. And they're not in the second suit because they had stopped at the time the second suit was filed. This is sort of a collateral thought. We have a borough, a village, and a city. And then we have this relocation committee. It turns out that there's just, I guess, five people left who are interested in the lawsuit. What happened to the borough, the village, and the city? Because if I read the record correctly, there's nothing definitive by those folks that said to the relocation committee, gee, this is terrible. Get in there. Go after it. In other words, what am I missing here? Am I missing something or am I making something out of something that isn't there? I think you're making something out of something that isn't there. In this case, because of the procedural posture of KRPC being dismissed, the five individuals who made up KRPC with the full support of the community decided, we are going to avoid the jurisdictional issues and just sue as individuals. Well, when you say with full support, that's, I guess, where I get lost. I'm not too sure what I see in the record with regard to that. There's nothing in the record one way or the other on that. See, so the full support bothers me. So, I mean, I don't know that this means anything, but it sounds like there's, because when we're talking about jurisdiction, we've got five people that are involved, and yet there's the borough, the village, and the city, and all that. And I just thought I missed something in the record. There's nothing in the record as to what happened after the suit was dismissed. Or before the suit was brought about, what these other folks were interested in. If you look at what the testimony that is in the record by the chair, the president of the tribal council, Jerry Norton, who's one of the individuals who seeks to intervene, who's actually in the courtroom with us today, he says the Kivalina IRA council, the tribal council, approved KRPC bringing the suit. If you look at the testimony of the city administrator, who's responsible for recording all of the actions of the city, she says, in the record, the city council approved KRPC as a plaintiff. If you look at the testimony of the tribal administrator, she says the tribal council approved KRPC to bring the lawsuit back in July of 2002. Now, all of these bodies, these are the elected officials of Kivalina coming together to try and solve a pressing problem of illegal discharges from the mine that are contaminating their drinking water. They all believed that KRPC was the appropriate plaintiff. And in fact, they instructed KRPC to bring the suit. When they were informed by the district court that KRPC was not the appropriate party, they said, the five individuals on the KRPC itself said, let's bring it as individuals. We could have done that before, but we wanted, as a gesture of solidarity with the community, to bring it as KRPC. Now, when we're told that KRPC is not the appropriate vehicle, we want to substitute them. And I submit it's very much like the substitutions in cases like Santana, where you have a very closely related party, or maybe a partnership rather than the two people in the partnership, or a husband suing on behalf of himself, or rather than the estate of his wife. It's very closely related here because the individuals are the group. Well, why isn't this KRPC just an assumed business name? Assumed business names don't have any standing to sue. They have to have some entity here, an individual or a corporation or something that's a legal entity. We think that it's more analogous to an unincorporated association, Your Honor. But I think that all of... Well, stop there just a second. And I didn't mean to interrupt, but that's where I was confused. If this entity is just sort of an assumed business name that doesn't have any, as Judge Fletcher indicated, any legitimacy as far as an independent entity, then it can't go anywhere. I mean, it's nice to go to the rules and say, let them move to do this and let them move to do that. But if they can't get in on their own, they also can't get in. I kind of read the law that they cannot also move to bring these other people in to correct. But you seem to say, let's just ignore that. I'm missing something. Apparently, you think that this entity has some being, legal being, that I don't see maybe or that I don't understand. Well, I think that in the Ninth Circuit, it's clear... Excuse me. Within the context of a complaint and cause of actions that have been filed. That's the vehicle here. Right. Okay. Within that context, tell me how you see that. I see either a 17A motion, which relates back to when the complaint was filed. I understand, but you've ignored my issue that I can't figure out. And if you have... Let's suppose I just make up ABC. It doesn't exist. And I file a lawsuit in the name of ABC and someone says, who's that? I said, I don't know. It's ABC. Here we have a designated relocation committee. If we don't have its legal nature before us, how can we go forward and let them make all kinds of motions and actions in the lawsuit? Because if they don't have legal standing, how can we do that? I think that whatever jurisdictional defect your Honor perceives... It's not a jurisdictional... I'm trying to find out, as Judge Goodwin said, what is the committee? What is its legal significance? How does it stand on its own? We'd say under federal laws and unincorporated association, and thus has the right to sue and be sued. But because of this thorny procedural issue, the individual said, we don't want to battle about whether KRPC has standing or not. What we want to do is have our case about Ted Kaminko's admitted illegal discharges into our drinking water heard on the merits. Of course you do. But in order for this to be a suit where the individuals can now come in, I think it had to have been a valid suit with respect to KRPC. Help me out if you could. If it's going to take too long, it's going to take too long. But I would love you to give me your best case with reference to the record in terms of any document establishing this committee that gives it authority to bring this lawsuit. I think the establishing documents, I can't point you to the exact page in the record, but the establishing documents that say that the committee shall take all necessary actions. But you can't put my nose in the record as we stand here? Not as I stand here, perhaps. Let me ask you about another thing. The trial judge thought that the CWA requirement of a 60-day notice letter was neglected in this case. What do you say about that? Well, I think here under this court's precedent, and I'll just rely on two cases. I'll rely on the Bosma case of Judge Brunetti's, and I'll rely on the SFA Keeper case of Judge Fletcher's. The way those cases say that a notice letter must provide reasonable specificity, looking at the key language of 40 CFR 153.3a, if you look at those decisions, for example, in the Bosma case, if you read the Bosma case, it says, Bosma case concerns adequacy of notice around violations. If you look at that, and the court there said, based on the fact that violations originated from the same source, were of the same nature, and were easily identifiable, we find CARES notice adequate. If you substitute in, instead of violations, potential plaintiffs, the individuals here, you read it, based on the fact that the potential plaintiffs originated from the same source, were of the same nature, and were easily identifiable, we find the notice was adequate. So our application here, this is a direct application of the decision in Bosma, and you could take similar language from San Francisco Baykeeper, and plug in potential plaintiffs instead of violations. Let's say, looking at Baykeeper at page 1155, we hold, and I'm going to substitute in potential plaintiff for violation, we hold that as long as the notice letter is reasonably specific as to the nature of the potential plaintiff, the plaintiff has fulfilled the notice requirement. The letter does not need to describe every detail of every potential plaintiff. It only needs to provide enough information that the defendant can identify the plaintiff. This is a direct application of Your Honor's authority, binding authority, on this case. Now, section... You seem to have caused all the problems in this case. Section 153, both of the key cases here are your cases, the California Credit Union case and Bosma. Section 153, I mean, Section 135.3A, the key language is that the notice must provide enough information for the recipient to be able to identify the violations, the dates, and the identity of the party. Here, if you look at that key language, the notice letter provided by KRPC and its members is adequate under the reasonable specificity standard set for Bosma, Waterkeepers, San Francisco Baykeeper, and Southwest Marine. I see that I'm running short on time. I'd like to reserve a little bit. I think we have your argument in hand. Let's hear from the other side, and then you have a couple minutes. Good morning. I'm Sean Halloran. I represent Technique Alaska, Incorporated. With me at counsel's table is counsel for the Northwest Arctic Borough, and we'll be reserving some time for her to address the court problem. About how much time do you want to... Two or three minutes is all right. We'll try to help you, but you please keep your eye on the time. I think this court needs to be aware that this appeal is a frivolous appeal, and it's frivolous because there is no appellant in front of this court. Judge Stedwick, in his ruling, determined that they didn't have standing, they didn't have the capacity to sue, and in large measure that is based on the fact that they don't have a legal existence. KRPC, as a matter of law, has no independent existence that could allow it to come before this or any other court, and that is not being challenged on appeal. Until this day, here in this courtroom, a few minutes ago, there was nothing presented by the appellants to suggest in any way that Judge Stedwick was at all wrong in his ruling making that determination. It's not addressed in their opening brief, it's not addressed in their reply brief, it's not addressed in their motions, and you have to respect, where they've waived that argument on appeal, that that is a correct determination. KRPC has no ability to walk into this court. It's not here because it's been determined to not have an existence, and therefore this court has no jurisdiction and cannot hear this appeal. But you don't quite mean it doesn't have any existence. I think you mean something that its powers don't extend to bringing this lawsuit. It has no legal existence, no juridical existence. It is a committee. It is essentially a contractual relationship between three governmental entities, the Northwest Arctic Borough, the Kivalina IRA, and the Kivalina City. And those three governments together created a committee. The committee itself has no legal existence. It does not have the capacity to sue because first and foremost, it has to have a legal existence in order to acquire capacity to sue. And it's a legal existence that it needs, and it's a legal existence under Alaska law that it's lacking. That's what brought me to my question to counsel. It seemed to me you have the legal entities, the city, the borough, and the village. And for whatever reasons, they decided to enter this contractual relationship to relocate the city, as a village to the city. Both, essentially. But they didn't, as far as I can tell, they didn't say to these folks, the KRPC, go ahead and do anything you want with regard to all of our legal problems that envelop our community. They just told them, you're going to work on, as an advisory board, as I tend to, for a driving committee, on the relocation. That's correct. Now, these folks are saying, gee, we love to see, let's get into this water. I don't know who wants to get into the water. I have no idea. And I can't tell from the record whether the city, the borough, or the village, or anybody, thinks anything about water. We know that these folks do. And so, unless they're properly structured, as you indicated, I can't find anything, unless you can tell me that I'm wrong, I can't find any record that this water thing was even in the contractual arrangement, even if they had legal existence. It's not there, Your Honor. You won't be able to find it. It's not in the record. It's not in the universe. It just doesn't exist. They were created as an advisory body to advise the city, and the borough, and the village, with respect to relocation of Kivalina. That is their mission. You have their organic documents. They're in the record. They're in the excerpts. It shows specifically what it is that they're empowered to do, or not empowered to do, and that's not something that they're empowered to do. Nor were they given authorization to bring this appeal. Mr. Cole told you a few minutes ago that at a June 2002 meeting that they were authorized and that there were declarations, which he has submitted in one of his motions, or excuse me, I believe it's his supplemental excerpt, in which these declarations say that they were given authorization at a particular meeting. Judge Sedwick found that those affidavits were not true and could not be relied upon, and the reason is at the meeting where they're saying that they got this authorization, in the record of the district court is a videotape of that meeting. There's the official minutes of the meeting, and there is a transcript of the meeting, and all of those show that what those people are saying happened at the meeting did not occur. You can watch the videotape. You can see for yourself that there was never a vote to authorize KRPC to sue. There was never a vote approving the lawsuit. There was never any discussion. KRPC announced when Mr. Cole said I need a plaintiff. Who will be a plaintiff for me? KRPC announced that they would take on the role. That is what happened at the meeting, and you've got the full meeting in front of you if you check the record. Not only does KRPC not have the ability to create jurisdiction in this court, the individuals don't have any role in this court either. They don't have standing to bring a motion that KRPC brought seeking to add them in. The individuals are not before this court just as KRPC is not before this court. You don't have jurisdiction based on their assertion that the individuals have parked that motion because they didn't intervene in this appeal. They didn't intervene in the court below. They're not before this court, and you don't have jurisdiction to create jurisdiction just because they feel like having you do it, and that's really what's going on in this appeal. In my prior questioning, that's where I was trying to get. If KRPC has no legal standing, then they can't bring in a motion to create legal standing in a non-party who didn't intervene. That's correct. And that's about it, unless I've missed something. You haven't missed a thing. That's your argument. That is our argument. Okay. Even if standing existed, even if jurisdiction existed, if you could get over all of those hurdles, the hurdle that you cannot get over is substituting those individuals for KRPC. The U.S. Supreme Court and the Ninth Circuit have both made it very, very clear that the 60-day notice is a technical requirement that that document within its four corners has to give notice of who the plaintiff is. And the plaintiff was not disclosed, the individuals, the six individuals were not disclosed as potential plaintiffs in the 60-day letter. There's no way of getting around that. They point you to cases which you folks are intimately familiar with, which say there's some leeway if you have a claim, you give someone notice, you say, you know, there were 10 violations in the month of August that we're suing for. You get into the litigation, you find out that in actuality there were 14 or 15 violations in the month of August. You can amend your complaint and bring in those additional claims because you've given them notice that what you're suing about are the claims that occurred in a particular period of time. And you've identified the potential plaintiffs, too. You've identified the plaintiffs in that instance. You can't say, well, just because you should have or could have figured out that six individuals might someday want to also sue you, we'll substitute them in and we'll ignore the requirements of the law. I mean, you have to look at Washington Trout. You have to look at those cases and they just don't allow for substitution here. And Judge Sedwick, I think, was correct in his ruling in that regard. It doesn't matter if we hadn't had to dismiss for any other reason. There's just no way that you can allow the substitution of those individuals here. There's an additional problem in that you've already taken judicial notice of the fact that there is a second lawsuit where those six individuals or actually five individuals were alive are suing Techminco again and the borough and NANA. And that is you can't split a cause of action and that's essentially what they're asking you to do. They're saying, we already have one lawsuit but we'd like to sue them again for largely the same thing. One of those lawsuits, if you allowed them in, would have to be evaded under Ninth Circuit law. And I can guess which one they want to obey. I don't think that's the argument you really want. I don't think that they can create this second lawsuit again. It doesn't exist now. They're asking you to give it a life that it doesn't have. And that's the big problem. Yeah, I understand. But the argument I'm responding to and I'm not sure it's critical to your case, you're saying they can't have both lawsuits they've got to pick one. Well, okay. Well, no, it's not that they have to pick one. It's that there's an additional hurdle to creating duplicate lawsuits and that is that one of them would have to be dismissed. They don't get to pick. They pick. They file their own lawsuit. They don't get to now breathe life into a lawsuit that has not existed essentially since the beginning. The cases that allow if you look at their Rule 21 motion, the cases that allow an appellate court to substitute individuals in order to avoid a jurisdictional problem are all cases where jurisdiction existed at one point in time. Jurisdiction was on the verge of being lost and in order to avoid losing jurisdiction they substituted parties. It's the same thing that a court does when it applies Rule 17 at the district court level. You have a case and you decide before we let the case go we'll let someone else in. Here you've got a very different situation. There's never been anyone in front of this court. You've not had jurisdiction since before this case started. The district court didn't have jurisdiction and now they want to breathe life into a case that really doesn't exist and has not existed and they're not challenging the fact they concede in their Rule 21 motion on page 5 that they are not challenging any of the issues that led to their lack of standing and their lack of capacity to sue. Those issues aren't before you. You don't have the ability to go out and look at those things where they're not being challenged. This case doesn't exist from the day they filed it once they've abandoned those issues and there's no way to resuscitate a case that isn't really before you. The borough has comments that they would like to make. If you have no other questions I'll turn it over to the borough. Thank you. There is no appellant in this case. Center on Race, Poverty and the Kivalina Relocation Planning Committee. Judge Brunetti asked, well what's the borough's position? What's the city of Kivalina's position? What's the village of Kivalina's position? Well the borough's position is it did not authorize this lawsuit initially and it has expressly disapproved of this appeal. My reading of the record for better or worse was something of the fact that you have a bunch of folks that are involved in this relocation. You also have this water problem. And there didn't seem to be a consistency of what was going on. Certainly the committee and the second time being relocated at least two times, they wanted to get an advisory committee to relocate. But I could not find anything in the record of any consensus by anyone relative to the water or even mention of it. It just was brought up because they filed the lawsuit. And then I tried to look, well who are these folks? And they were, as stated in the record, they were a contract to go out and help advise in relocation. And that's where I ran into this empty hole. Well obviously we don't, and there was no, there was some illusion of the fact or some discussion of the fact that the borough, the city and or the village had authorized the lawsuit. But I couldn't find that to my satisfaction. There is no authorization by the borough or the city or the village. And Judge Sedgwick so found. And that ruling is not being contested on appeal. I also refer you to the fact that after KRPC filed the notice of appeal and then abandoned the issue on whether or not they had a standing and capacity to sue. The Northwest Arden Borough passed a resolution, the assembly that specifically disapproved of the lawsuit and directed our office to file a motion to dismiss, which we did. The simple fact of the matter is they had no authority to bring the lawsuit in the first place and they have no authority to bring the lawsuit in the first place. And you are made a party for what purpose? We are a party for remedial purposes. But I think we do have the ability to file this motion. Number one in some ways it's academic in the sense that the Tecumseh joined in the motion and they certainly have party status. But this is a unique situation. It wasn't until the appellant filed its opening brief that it was clear that they were no longer asserting that they had the capacity to sue the Tecumseh. Why does the borough disagree with the lawsuit? Why does the borough not want this lawsuit to go forward? The borough is willing to go forward with the other lawsuit. Why does not want this one to go forward? We don't believe the KRPC is that a lawsuit is the appropriate vehicle to resolve these issues. There's something behind that answer but you don't need to tell me if you don't want to. There's a letter in the record from the mayor saying that he didn't believe that a lawsuit was the appropriate way to deal with this that there are other ways and alternative dispute resolutions that were more appropriate. It sounded to me underneath a social political whole bunch of things that may drive a decision of why you would or would not want to deal with this issue. I would just note that Northwest Arboro intervened as a defendant in this case. Not as a plaintiff which basically supports the proposition that it never authorized the lawsuit in the first place. Thank you very much. You've saved a short amount of time. I just have a couple of points I'd like to make. First I'd like to point your honor to three relocation studies projects and related actions. What page is that? That is page one of two pages of exhibit B. It's 099. I now have in front of me where on this page? Paragraph three at the bottom. All other relocation studies projects and related actions. And then you have the actual testimony of the members of KRPC at excerpts of record tab 22 paragraph 5 and excerpts of record 11 paragraph 11. Say excerpts of record 11. I'm slower and you're faster. I'm on page 22 of supplemental excerpts of record. Is that where I should be? It looks like I'm in the middle of a complaint. No, no, no. It's tab 22 in the plaintiff paragraph 5. The second page. This is the declaration of Jerry Norton who's president of the Kivalina IRA Council and is also a member of KRPC and is also one of the individuals who seek to be substituted here. Our entire relocation is about water. The sea is forcing us to move and we need to find safe drinking water for our new village site. If you turn to tab 11 in appellant's excerpts of record and you look at paragraph 11, there again you have Enoch Adams who's chair of the KRPC Council           is also a member of the Kivalina IRA Council and is also a member of the KRPC Council and is also a member      and  also  of the KRPC Council and is also a member of the Kivalina IRA Council and is also a member of  KRPC Council. I think that basically both Rule 17 and Rule 21 are resting on the foundation that meritorious suits should not be dismissed for lack of a proper plaintiff if an honest mistake was made in the choice of a plaintiff and should not  dismissed    plaintiff   mistake was made in the choice of a plaintiff if an honest mistake was made in the choice of a plaintiff if an honest mistake              of a plaintiff if an honest mistake was made in the choice of a plaintiff should not  dismissed for lack of a
judges: Goodwin, Brunetti, W. Fletcher